

**PBT**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM JOSEPH HANRAHAN, | CIVIL ACTION |
| Plaintiff | CASE NO. 15   3227 |
| vs. | |
| Morgan, Lewis & Bockius LLP, | |
| Defendant | |

FILED
JUN 15 2015
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## COMPLAINT

NOW COMES Plaintiff William J. Hanrahan, for his complaint against Morgan, Lewis & Bockius LLP, alleging the following:

### INTRODUCTION

1. William J. Hanrahan ("Plaintiff") is a 26 year-old graduate of the Drexel University Thomas R. Kline School of Law ("Drexel Law"). At the time of the injury wherein this cause of action materialized, discussed *infra*, Plaintiff was a 25 year-old second-year law student at the same law school (then called the Drexel University Earle Mack School of Law).

2. This is a civil action for declaratory, compensatory, and injunctive relief under The Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101, et seq. and the Pennsylvania Human Relations Act ("PHRA") 43 P.S. § 951 et seq.

3. Morgan, Lewis & Bockius ("Defendant" or "Morgan Lewis") uses at least one hiring practice or policy that has a disparate impact on disabled candidates when making decisions about which candidates to offer positions as summer associates and associates. Defendant cannot justify such practices or policies as job-related and consistent with business necessity.

4. As a result of utilizing such a practice or policy that has a disparate impact on disabled candidates, Defendant failed to hire Plaintiff for a Summer Associate position that Plaintiff properly applied for and was qualified for according to Defendant's own qualification standards listed on Defendant's website at the time Plaintiff applied for the position. This conduct constitutes unlawful discrimination as defined in 42 U.S.C. § 12112(b)(6).



## JURISDICTION AND VENUE

5. All of the allegations set forth in the above paragraphs are incorporated herein by reference.

6. This Court has original jurisdiction over all claims arising under 42 U.S.C § 12101, et seq., which is a federal statute, pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over the claims herein arising under 43 P.S. § 951 et seq., which is a Pennsylvania statute, pursuant to 28 U.S.C. § 1367(a), because the claims under 42 U.S.C. § 12101 et seq., over which this Court has original jurisdiction, and 43 P.S. 951 et seq are based on the same facts and form part of the same case or controversy.

7. This Court is the proper venue under 28 U.S.C. § 1391(b) because Defendant is a limited liability partnership with one or more members who reside within the Eastern District of Pennsylvania or a substantial part of the events or omissions on which this claim is based, namely Plaintiff's application for a summer associate position and Defendant's use of an unlawful discriminatory hiring practice or policy that resulted in the rejection of Plaintiff for that position, occurred within the Eastern District of Pennsylvania.

## PARTIES

8. All of the allegations set forth in the above paragraphs are incorporated herein by reference.

9. Plaintiff, William J. Hanrahan, is a citizen of the United States and resident of Pennsylvania. Plaintiff now resides, and at all relevant times did reside within Chester County, Pennsylvania.

10. Defendant is an international law firm organized as a limited liability partnership that is now headquartered, and at all relevant times was headquartered, within Philadelphia County, Pennsylvania.

11. Defendant does now employ, and at all relevant times did employ, more than 500 employees.

## BACKGROUND FACTS

12. All of the allegations set forth in the above paragraphs are incorporated herein by reference.

13. On or about August 7, 2013 Plaintiff applied for a position as a 2014 Summer Associate at Defendant's Philadelphia headquarters via Defendant's online application system and in accordance with the instructions on Defendant's website, which invited second year law students who attend law schools that Morgan Lewis does not conduct on campus interviewing at to apply for the aforementioned position.

14. Summer Associates at Morgan Lewis are, and at all relevant times were, law students who work at Morgan Lewis during the summer months and are compensated the same as, or substantially the same as, first year associates (attorneys).

15. Plaintiff was qualified for the position of summer associate at Morgan Lewis for the summer of 2014 because Plaintiff was a second-year law student at Drexel Law, which is a law school accredited by the American Bar Association, and Plaintiff had an excellent academic record at same law school; specifically, plaintiff was ranked no. 4 in Drexel Law's Class of 2015.

16. It is the custom and practice of Defendant to give employment offers to all or most of its Summer Associates to return as Associates several months after graduating from law school and Defendant did give all or most of its 2014 Summer Associates employment offers to return as associates in 2015 after graduation.

17. On or about October 15, 2013, Plaintiff received notice via email from Ms. Paige Peltzman, who is the "Attorney Recruiting Coordinator" for Morgan Lewis, that Defendant was "not in a position to pursue [Plaintiff's] application further because we have completed our hiring of second-year law students for next summer." This message is an unambiguous rejection of Plaintiff for the summer associate position for which Plaintiff applied.

18. On March 28, 2014, Plaintiff filed an administrative complaint against Defendant with the Pennsylvania Human Relations Commission (PHRC) alleging disparate impact discrimination under the PHRA, 43 P.S. § 955(a), and the ADA, 42 U.S.C. § 12112(a). Said complaint was dual filed with the Equal Employment Opportunity Commission (EEOC).

19. PHRC investigator Ms. Joyce Jordan-Brown investigated Plaintiff's complaint. In a letter to Plaintiff from Ms. Jordan-Brown dated September 5, 2014, Ms. Jordan-Brown notified Plaintiff that the PHRC "found that the evidence is not sufficient to show an unlawful act of discrimination occurred" and that the regional office of the PHRC would review the case file and the enclosed "findings of the investigation" to determine whether further investigation is warranted.

20. In a letter to Plaintiff dated September 16, 2014, the "Executive Director" of the PHRC, Ms. JoAnn L. Edwards, notified Plaintiff that the PHRC decided to dismiss the complaint discussed in the previous paragraph "because the facts of the case do not establish that probable cause exists to credit the allegations of unlawful discrimination." Enclosed with that letter was a "Notice of Rights of Complainants After Dismissal of Complaint" that informed Plaintiff that Plaintiff could request a "preliminary hearing" to dispute the propriety of the dismissal. The document also informed Plaintiff that Plaintiff has the right to file a lawsuit in the appropriate Pennsylvania Court of Common Pleas within two years after the date on which Plaintiff received notice of the PHRC's decision to dismiss Plaintiff's complaint.

21. On or about September 24, 2014, plaintiff sent a letter to PHRC "Director of Compliance" Mr. James Kayer wherein Plaintiff requested a "preliminary hearing" to dispute the propriety of the PHRC's dismissal of Plaintiff's complaint, explained why the PHRC's dismissal was legally erroneous, and presented new evidence, namely the May 2014 consent decree that the Law School Admissions Council (LSAC) entered into with the U.S. Department of Justice (discussed *infra*).

22. In a letter dated February 10, 2015, Mr. Kayer notified Plaintiff that "the Commission voted to

deny [Plaintiff's] request [for a preliminary hearing] at its February 6, 2015 Commission meeting." Mr. Kayer did not provide a rationale for the decision other than the conclusory assertion that Plaintiff "presented no facts or evidence not considered at the time of the original finding or no facts or evidence that would alter the original finding."

23. On March 12, 2015 Plaintiff received a letter from the EEOC dated and postmarked March 6, 2015 that informed Plaintiff that "[t]he EEOC has adopted the findings of the [PHRC]" and thus the EEOC was "closing its file on this charge." The letter also informed Plaintiff that Plaintiff has the right to file a lawsuit against Morgan Lewis within 90 days of the date Plaintiff received the letter.

## PLAINTIFF'S DISABILITY

24. All of the allegations set forth in the above paragraphs are incorporated herein by reference.

25. Plaintiff has, and has been professionally diagnosed with, Asperger's Syndrome, an Autism Spectrum Disorder, which is a mental impairment that substantially limits at least one major life activity, namely thinking, learning, and/or brain function. *See* 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2(j)(3)(iii).

26. Plaintiff has a well-documented record of these disabilities, including multiple academic, cognitive, and/or psychological testing reports, a letter of diagnosis, Individualized Education Programs (IEPs) from when Plaintiff was a high school student, and verification of granted accommodations under the ADA at every tertiary educational institution that Plaintiff has attended. The record of Plaintiff's disabilities goes back approximately 15 years.

## STATISTICAL FACTS THAT ESTABLISH DISPARATE IMPACT DISCRIMINATION

27.. All of the allegations set forth in the above paragraphs are incorporated herein by reference.

28. At the time Defendant refused to hire Plaintiff, Defendant had not hired a Drexel Law student or graduate as a summer associate or associate but had hired law students and graduates from other law schools located in Philadelphia, Pennsylvania ("Philadelphia"), especially University of Pennsylvania Law School ("U. Penn Law").

29. In 2013, the year Plaintiff applied for a Summer Associate position at Morgan Lewis, Defendant conducted on campus interviews at every ABA accredited law school in Philadelphia except for Drexel Law.

30. Currently, and at all relevant times, Drexel Law is, and was, one of three ABA accredited law schools located in Philadelphia. The other two law schools so located are Temple University School of Law ("Temple Law") and U. Penn Law

31. According to statistics compiled by the National Association for Law Placement (NALP) Drexel Law enrolled approximately 420 students during the 2013-14 school year while Temple Law enrolled approximately 769 students and U. Penn Law enrolled approximately 774

students. During the 2013-14 school year at Drexel Law, 14 out of 420 students were disabled, at Temple Law 17 out of 769 students were disabled, and at U. Penn Law only 1 out of 774 students was disabled.

32. Therefore, at the time Defendant refused to hire Plaintiff, about 44 percent of the disabled law students attending law school in Philadelphia attended Drexel Law while only about 21 percent of all law students attending law school in Philadelphia attended Drexel Law.

32. By excluding students and graduates of Drexel Law from summer associate or associate positions while hiring a disproportionately large number of summer associates and associates who attend or attended one of the other law schools located in Philadelphia, Defendant utilized a policy or practice that, although neutral on its face, disproportionately screens out or tends to screen out candidates with disabilities, which constitutes unlawful discrimination as defined in 42 U.S.C. § 12112(b)(6).

33. Defendant cannot demonstrate that its exclusion of Drexel Law students and graduates from summer associate and associate positions is job related and consistent with business necessity because there is no evidence that Drexel Law students are generally less capable of performing the job requirements of the summer associate and associate positions than students and graduates of other Philadelphia law schools that Defendant hires from.

## OTHER FACTS THAT SHOW DISPARATE IMPACT DISCRIMINATION

34. All of the allegations set forth in the above paragraphs are incorporated herein by reference.

35. Defendant hires Summer Associates and Associates disproportionately from law schools that are highly ranked by the U.S. News and World Report ("USNWR") Rankings.

36. At the time Defendant refused to hire Plaintiff, Drexel Law was ranked #126 by the USNWR while U. Penn Law was ranked # 7 and Temple Law was ranked #56.

37. The single most important criteria that almost all law schools use for determining which applicants will be offered admission and how much, if any, scholarship money those candidates will be offered is the applicants' Law School Admissions Test ("LSAT") score.

38. The LSAT is administered by the Law School Admissions Council ("LSAC"). The LSAC has a history of unlawful discrimination against disabled LSAT examinees, namely denying many disabled examinees the accommodations that they are entitled to under the ADA, annotating the scores of examinees that received extra time as an ADA accommodation, and telling law schools to interpret annotated scores "with great sensitivity and flexibility," which is a way of telling law schools to discount the value and/or validity of the annotated scores as compared to the non-annotated scores.

39. In May 2014 the LSAC entered into a consent decree with the United States Department of Justice, wherein the LSAC agreed to certain reforms, including ending the practice of

annotating scores of tests taken with extra time and instituting more permissive approval of ADA accommodations requests.

40. The LSAC's past discriminatory practices against disabled examinees caused some disabled law students to attend law schools ranked lower than the law schools that such students would have gained admission into if LSAC did not annotate their scores or deny accommodations that they were entitled to under the ADA so that their LSAT scores reflected their true skills and abilities rather than the limitations imposed by their disabilities.

41. By utilizing the policy or practice of hiring disproportionately from among the students and graduates of highly ranked law schools, not at all from Drexel Law, and very little, if at all, from schools ranked below the USNWR top 100, Defendant uses a hiring practice or policy that screens out or tends to screen out disabled candidates, which is unlawful discrimination under 42 U.S.C. § 12112(b)(6)

42. Defendant cannot demonstrate that actual or constructive use of the USNWR rankings when determining which candidates to hire for Summer Associate and Associate positions is job related and consistent with business necessity because the USNWR law school rankings are based mostly on self-reinforcing criteria that are not reasonably reflective of the ability of the students and graduates from ranked law schools to perform legal work.

## PRAYER FOR RELIEF

All of the allegations set forth in the above paragraphs are incorporated herein by reference. Accordingly, Plaintiff asks this Honorable Court to grant Plaintiff the following relief:

1. Declare that the Defendant's aforementioned hiring practice or policy violates the ADA, 42 U.S.C. § 12112(a) and the PHRA, 43 P.S. § 955(a).

2. Enter a permanent injunction, under 42 U.S.C. § 12117(a) and 43 P.S. § 962(c)(3), or any other applicable state or federal statute, prohibiting Defendant from using the aforementioned practices or policies, namely excluding Drexel Law students and graduates from positions as summer associates and associates while hiring summer associates and associates disproportionately from other Philadelphia law schools and highly ranked law schools in general.

3. Enter a permanent injunction, under 42 U.S.C. § 12117(a) and 43 P.S. § 962(c)(3), or any other applicable state or federal statute, ordering Defendant to take steps towards remedying the discriminatory effects of the hiring practices and policies mentioned in the preceding paragraph by any reasonable methods, including by hiring summer associates and associates disproportionately from Drexel Law and taking any other remedial action that this Court deems appropriate.

4. Enter a permanent injunction, under 42 U.S.C. § 12117(a) and 43 P.S. § 962(c)(3), or any other applicable state or federal statute, ordering Defendant to give Plaintiff an offer for employment

as an associate at Morgan Lewis, open for at least 28 days from the date Plaintiff receives notification of such offer, with treatment, privileges, and conditions of employment identical to those of the 2014 summer associates who received offers to return as associates, except that, if necessary, Defendant must grant Plaintiff reasonable accommodations as required by the ADA.

5. Order Defendant to pay Plaintiff compensatory damages, under 42 U.S.C. § 12117(a) and 43 P.S. § 962(c)(3), or any other applicable state or federal statute, in the amount of $28,000.00, which is approximately the total gross summer earnings of 2014 Summer Associates at Morgan Lewis, or whatever the exact amount of money that Plaintiff would have in fact earned as a 2014 Morgan Lewis summer associate is.

6. Order any declaratory, injunctive, compensatory, or other relief that the Court deems appropriate and just.

Respectfully Submitted,

_/s/ W.J. Hanrahan_            06/08/2015

William J. Hanrahan, plaintiff (pro se)    Date
williamjh56@gmail.com
(484) 786-3927